[No. 15402.   Department Two.   January 13, 1920.]

# J. SAARI, *Respondent,* v. WELLS FARGO EXPRESS COMPANY, *Appellant.*[1]

MUNICIPAL CORPORATIONS (379, 380, 389)—USE OF STREETS—CROSS-ING AND PASSING—NEGLIGENCE—EVIDENCE—SUFFICIENCY.   That de-fendant, driving a truck which was run into by plaintiff's motor-cycle at a street intersection, had the right of way and was exer-cising due care, is established where there was evidence that he entered the street intersection first and made a lawful turn when he was hit from behind and the ordinance gave vehicles to the right the right of way and required plaintiff to look out for the truck, and there was little evidence that defendant was driving other than in a careful manner.

APPEAL (417)—REVIEW—FINDINGS—PREPONDERANCE OF EVIDENCE. While the findings of the trial court upon conflicting evidence are ordinarily adopted, they will be reversed on appeal if not supported by the preponderance of the evidence.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 1, 1919, up-on findings in favor of the plaintiff, in an action for personal injuries sustained in a collision with a motor truck, tried to the court.   Reversed.

*James B. Murphy* and *Arthur H. Hutchinson,* for appellant.

*O. L. Willett* and *John A. Soule,* for respondent.

HOLCOMB, C. J. — Respondent had judgment, after trial to the court without a jury, upon findings of fact and conclusions of law in his favor for damages for personal injuries.   The negligence of the defendant's employees and the contributory negligence of plaintiff were in issue.   Plaintiff suffered very serious injuries and his property was damaged, and the amount award-ed by the court, if defendant was at fault and plaintiff

[1] Reported in 186 Pac. 898.

not, was very just and well founded, notwithstanding appellant's contentions respecting same.

The automobile accident which gives rise to this action occurred at the intersection of Tenth avenue north and East Aloha street, in the city of Seattle, at about ten forty-five o'clock a. m. of October 24, 1917. Tenth avenue north runs in a northerly and southerly direction and is intersected at right angles by East Aloha street. Tenth avenue north has laid upon it double street car tracks and is somewhat wider than East Aloha street. Both streets are paved and, at the time of the accident, the pavement was dry. Between the street car tracks and for eight inches on each side thereof, Tenth avenue north was paved with brick. On each side of East Aloha street and on the west side of Tenth avenue north the level of the lots is from five to ten feet above the street level, so that one approaching on either street does not have a clear vision of the other street until near the street intersection.

The one and a half ton truck of defendant, with a covered body of the type usually employed by it, approached the intersection from the west on East Aloha street. A motorcycle driven by the plaintiff, with a companion on the rear seat, approached the intersection from the north on Tenth avenue north. When about twenty feet from the street intersection, plaintiff saw the top of the approaching truck on East Aloha street over the lot level, and immediately he shut off his power and applied his brakes. He had been traveling about five feet from the west curb, and immediately changed his direction so that he arrived in the intersection between the two westerly street car rails a few feet south of the center of the intersection. The truck was traveling a little to the south of the center of East Aloha street and, intending to turn into Tenth avenue north and travel south on that

street, the helper, sitting to the right of the driver of the truck, signalled with his hand extended on the right side of the truck, and the driver swung the truck towards the south. In order to make the turn, he had to approach the center of Tenth avenue north, and the evidence shows he traveled with his left rear wheel about a foot to the east of the extreme westerly street car rail, a distance of about thirteen and one-half feet from the westerly street curb. Plaintiff and his witnesses maintain that, while in the act of turning and while in the street intersection, the left rear wheel of the truck swung and struck the middle of his motorcycle. Defendant's witnesses are equally positive that the motorcycle and the left rear wheel of the truck came into collision a few feet south of the intersection after the truck had straightened out towards the south. While plaintiff and his witness testified that the truck was traveling at a high rate of speed, in view of the fact that the truck had turned into East Aloha street one block west of Tenth avenue north, and that the driver was intending to turn into Tenth avenue north, it hardly seems probable that the truck had attained any great speed. While it seems to be plaintiff's theory that the rear of defendant's truck skidded as it swung around the corner, there is no evidence upon which to base such a fact, neither the plaintiff nor his witness so testifying. The evidence is undisputed that the front wheel of the motorcycle was buckled and bent backward towards the frame, apparently indicating a collision at great momentum with something in front, or an impact from a heavy object from the front.

Defendant alleged the violation of the state law and of certain city ordinances, and pleaded in the second

paragraph of his affirmative defense certain sections of ordinance No. 37,434 of the city of Seattle, which are not traversed by the plaintiff and must, therefore, be taken as established. We quote two sections of this ordinance:

"Section 49. Drivers shall look out for and give right of way to vehicles simultaneously approaching the street intersections from their right.

"Section 51. The driver of any vehicle turning to the right from one street into another shall have right of way over vehicles traveling in the direction in which such vehicle is turning and the driver of any vehicle traveling in the direction in which such vehicle is turning shall allow such right of way to such vehicle so turning."

Appellant assigns numerous errors, but it is unnecessary to discuss all of them. Under the paragraphs of the ordinance just quoted, and the evidence shown by the record, it is plain that defendant's truck had the right of way at this street intersection. Indeed, in his amended complaint, in paragraph 3 thereof, the plaintiff seems to admit this in his allegation, "said plaintiff having stopped on the center of the intersection of said streets for the purpose of giving the approaching truck the right of way." From all the facts shown by the record, there is little upon which to base the contention that defendant's truck was being driven in other than a careful, prudent manner and in no way violative of the city ordinance relating to speed. In turning, the truck, which was nineteen feet long, projected into Tenth avenue north about thirteen and one-half feet from the west curb. The body of the truck was about eight feet wide. The record fails to show that this movement of the truck was other than a compliance with the city ordinance, which says:

"Section 21. — A vehicle, except when passing a vehicle ahead, shall keep as near the right hand curb as practicable, so as to leave the center of the street free and open for overtaking traffic.

"Section 29.—A vehicle turning into another street to the right hand shall turn the corner as near the right hand curb as practicable." Ordinance No. 37,434.

Plaintiff testified positively that his motorcycle entered the street intersection before the defendant's truck. His only other witness of the accident testified that the two vehicles entered the street intersection at about the same time. All of defendant's witnesses (four in number) testified that the truck entered the street intersection before the motorcycle. Appellant insists that the weight of the evidence clearly preponderates against the finding of the trial court in this regard, while respondent asserts the contrary. In view of these facts, the case of *Yuill v. Berryman,* 94 Wash. 458, 162 Pac. 513, relied upon by respondent, is of little comfort to him. There, upon reviewing the evidence *de novo,* after a trial by the court without a jury, we sustained the findings of the trial court that the appellant, respondent having entered the street intersection first and having the right of way, was negligent in not slackening his own speed and in not looking more carefully so as to avoid a collision, and respondent was not negligent.

Although we ordinarily adopt the findings of the trial judge upon conflicting facts, we are not compelled to do so if we conclude they are not supported by a preponderance of the evidence. *Daugherty v. Metropolitan Motor Car Co.,* 85 Wash. 105, 147 Pac. 655. And while the trial court, although undoubtedly warranted, in weighing the testimony of the witnesses, to consider their demeanor and manner of testifying, may reject any or all testimony of the witnesses for either

party when they conflict, and find the facts contrary to the greater number of witnesses, if justified, yet, when it affirmatively appears that certain purported evidence is given greater weight than should be given, and such enters largely into the decision upon the facts, we will not be bound by the findings unless they manifestly appear correct.

The trial court analyzed and weighed the evidence of the principal witnesses, in part, as follows:

"There are three factors of testimony to be considered; one is the testimony of the plaintiff Saari and his companion. Against them is the testimony of Benjamin and Harris, who were in the other colliding vehicle. The third is the testimony of Mrs. Williams and her daughter. Then, outside of all that, are the actions of natural forces—physical forces.

"Saari and his witness state, in effect, that they were coming at a reasonable rate of speed—ten or twelve miles an hour—down Tenth avenue north. . . . They say they were thirty feet or more from the intersection of the pavement when they got a view down Aloha street; and somewhere towards the middle of the block they saw the truck coming towards Tenth avenue north at a high rate of speed; and that they were in the intersection prior to the entrance of the intersection by defendant."

This disregards the testimony of Saari's witness that both vehicles reached the intersection about the same time. The court continues as follows:

"Benjamin (driver of the truck) and his friend say that he rounded the corner and was facing south when he heard or felt a bump in the car, and he immediately stopped his car. In his deposition he repeatedly refers to a bump or collision in the rear, leading one to think that something must have struck the back of the truck; but he later states that the blow was on his left hind wheel. . . .

"Is it possible to believe that Benjamin was accurate when he says that he was struck in the rear and the effect of the blow was seen upon the left hind hub, when he had reached the position of being parallel with the curb and the motorcycle back of him was parallel with the car tracks and curb?"

The court, of course, could reject Benjamin's testimony as improbable, or for any other reason that was sufficient, but he disregards the testimony of Saari that he had reached the center of the street intersection and his motorcycle had almost stopped in order to give the truck the right of way, and that he stopped about in the center of the street. His testimony itself shows that the place where he says he stopped, or almost stopped, and with his left foot touching the ground, was to the south of the center of the street intersection; and that, if he stopped right in the center of the street in order to let the truck pass, it must have been because of the truck coming from the right and reaching the street intersection at least as soon as he did, and had, as he thought, the right of way through the intersection, whichever way it wished to go. If he stopped exactly in the street intersection when, as he said, the truck was coming rapidly from the west in almost the center of the street, it might be that he was careless and negligent in stopping there in the way of the oncoming truck, unless it was apparently impossible for him to act otherwise to avoid it, for it might have been the purpose of the truck to cross the street instead of turning; and if he had reached the place a little south of the center of the street intersection, he certainly was negligent, unless apparently impossible for him to do otherwise for his safety, in stopping, or almost stopping, at that place, when and where the oncoming truck could not make the turn, if it desired, in the space left for it in the

street without probably in some way striking his motorcycle, which he says it did by the swing of the rear end hitting his motorcycle about the middle.

The court, further analyzing the testimony of Benjamin by deposition, mentions it as having been given:

"at a considerably later time than the time of the accident, after well considered, thoughtful deliberation, knowing that his testimony was going to be put into the record, and that on his testimony would depend, to some considerable extent, the determination of the case; but right after the accident, when still fresh in his mind, he goes down to the police court and says that he was hit when the car was going around the curb, around the corner. Now, there is not cross-examination of the stenographer or clerk down there at the headquarters who took that down; but there have been many cases of this nature. I have found by observation that the stenographer would take down testimony like that absolutely as given. They are all strangers to him. . . . He (Benjamin) says to the police that the collision occurred as he was swinging around the corner."

The above allusion to a police report referred to a written, unsigned memorandum, introduced by plaintiff without any authentication by the person who received it, or the witness, or any other, purporting to be a police report dated October 24, 1917, at 12:35 p. m., report of A. F. Benjamin, Livingston Hotel, a part of which was as follows:

"I was going east on East Aloha and *was turning* to go south on Tenth Avenue North at eight miles per hour, and the motorcycle with two men on it was going south on Tenth Avenue North between twenty-three and twenty-five miles per hour, and the motorcycle ran into my machine."

Even had this memorandum of the report to the police department been competent in the way it was introduced, it was not inconsistent with the testimony

of Benjamin by deposition. In that brief, unsworn report he is purported to have stated to the police department that "he was turning to go south on Tenth avenue north at eight miles per hour." It is well established by the evidence that the motorcycle, at the time of the collision, was on the left of the truck, and the truck, according to Saari's own testimony, was almost, if not entirely, straightened out and headed south on Tenth avenue north, and whether it *was turning* or *had turned* is so fine a distinction in such case as to be entirely immaterial so far as the consistency of the evidence is concerned. In cases tried by the court, we ordinarily consider that improper and incompetent evidence is given no prejudicial weight or credence, but here the contrary affirmatively appears. The report of Benjamin to the police department was improperly admitted and was given undue weight and improper analysis by the trial court.

The trial court also rejected the testimony of Mrs. Williams and her daughter, two disinterested witnesses. Mrs. Williams testified to the effect that she was riding in a rent car, sitting in the back seat between another lady and her prospective husband, and that her daughter was riding in a jump seat on the left side of the car, and the driver in the front seat; that the car was going north on Tenth avenue north and that she was observing the traffic carefully, because her prospective husband was very nervous about accidents from automobile traffic, and that there was very little traffic on the street, which she remarked, and that she saw the motorcycle coming down the west side of Tenth avenue north from the north very rapidly, about one block from Aloha street. She says that, when she was about one-half a block south of Aloha, she looked across some vacant ground to the west of Tenth avenue north and saw the truck coming

.towards Tenth avenue north on Aloha, that she wondered whether they would reach Aloha first or whether the truck would; that the truck reached Aloha first and turned south into Tenth avenue north; that the motorcycle, on reaching the intersection, looked as though it was going between the curb and the truck, but it then swerved to the left and ran upon the street car tracks, and the front wheel slipped upon the street car rail and struck the truck on the left near the center. Her daughter testified that she did not see the motorcycle first, but that she saw the truck coming upon Aloha street towards Tenth avenue and turn into Tenth avenue, and then saw the motorcycle enter the street intersection, veer to the left, run upon the street car track, and then strike the truck. Both of them testified that the truck had gotten straightened out to the south and was about twenty-five feet, as they estimated the distance, from the street intersection when the motorcycle struck it, and that their car had reached a point exactly opposite that point, and that their car and the truck ran on but a very few feet before they had both stopped. The daughter was about fourteen years of age.

The court rejected the entire testimony of Mrs. Williams because she was on her way to her wedding (her second) with the gentleman whom she was to wed, approaching the house of the minister, and it was not thought she would observe so accurately as she testified concerning the motorcycle and truck; that she would have been absorbed with the attention of the gentleman at her side; that he was not produced, etc. Yet the witness testified that she was concerned about the traffic because of the nervousness of her prospective husband, and was therefore observing traffic on the street and was concerned with whether the truck would cross Tenth avenue north on Aloha ahead of

them or not, and that the first vehicle she saw in the vicinity of the Aloha street intersection was the motorcycle about a block away coming at a high rate of speed, and that the second was the truck, coming towards Tenth avenue, and that she saw the truck enter Tenth avenue and turn south. The testimony of the daughter was rejected because she could not locate upon the diagram on paper the positions of the various vehicles intelligibly. There is nothing unusual in that. A great many people who have not had experience with maps and diagrams cannot, as the saying is, "Make heads or tails of them." They can allocate themselves with other objects upon the ground, but not upon paper.

The trial judge also experimented with what he called his "small" passenger car, in turning corners at a lawful rate of speed and in ascertaining how closely he could keep his car to the curb while so turning, and considered the result of such experimenting in arriving at his conclusions. In the first place, such evidence was no part of the trial, and its consideration was improper. In the second place, there is a considerable difference between a little passenger car and a large truck, with very long, heavy and rather inflexible frame and wide body, in their respective adaptabilities in turning corners shortly and close to the curb while moving even at the lawful speed.

All things being considered, we are of the opinion that the court did not correctly weigh the evidence and the inferences from the evidence at the trial, and that the preponderance thereof is greatly on the side of appellant.

The judgment is therefore reversed and the cause dismissed.

MOUNT, MITCHELL, FULLERTON, and BRIDGES, JJ., concur.